FILED
United States Court of Appeals
Tenth Circuit

December 21, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROBERT PARK MEDEARIS, JR.,

Plaintiff - Appellant,

v.

CITY OF TAHLEQUAH; MAYOR
JASON NICHOLS, in his official capacity,

Defendants - Appellees.

No. 18-7009
(D.C. No. 6:17-CV-00005-JH)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **MORITZ**, and **EID**, Circuit Judges.
_____

Robert Park Medearis, Jr., appeals from the district court's grant of summary

judgment to the City of Tahlequah (the City) on Medearis's claim that the City

interfered with his right to take leave under the Family and Medical Leave Act

(FMLA), 29 U.S.C. §§ 2611-2654.  Exercising jurisdiction under 28 U.S.C. § 1291,

we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## BACKGROUND

For many years, the City employed Medearis as its City Attorney. On September 8, 2015, however, he became incapacitated. He went to the emergency room for falls and confusion and was admitted to the hospital, where he suffered "from confusion, cognitive deficits, altered mental status, and impaired judgment." Aplt. App., Vol. I at 45. He was diagnosed with alcohol use disorder, and at some point he developed a pulmonary embolism.

Medical staff were not optimistic about Medearis's chances, advising his then-wife, Sandy Medearis, to prepare for him to die. In mid-to-late September, Ms. Medearis sought and obtained from an Oklahoma court an order of legal guardianship over Medearis. However, Medearis's health improved, and he was transferred to a nursing home on or about October 9, 2015.

During this period, the City continued paying Medearis his salary and benefits. Notably, however, the City didn't believe Medearis was entitled to leave under the FMLA and thus didn't give any notice of FMLA rights either to Medearis or to Ms. Medearis as his legal guardian. Through their communications with Ms. Medearis, City officials understood that Medearis's condition was dire, and they remained concerned about the City's legal representation. In mid-October, the Mayor, Jason Nichols, signed a contract with a local attorney to act as Interim City Attorney. But with Medearis's long absence being the best-case scenario, the Mayor communicated to Ms. Medearis near the end of October that the City needed to replace Medearis as City Attorney. The Mayor believed that a resignation would be a

2

softer and more respectful way to handle the transition. If Ms. Medearis as his guardian would provide a letter of resignation on Medearis's behalf, the Mayor promised to fight for him to continue to receive payments and benefits for as long as the City Council would agree to do so.

Ms. Medearis gave the Mayor an undated resignation letter. At a meeting on November 2, 2015, the City Council voted to accept the resignation and make it effective on January 31, 2016, thus continuing Medearis's pay and benefits for three additional months. The City Council further voted to make the Interim City Attorney the City Attorney effective on February 1, 2016.

Medearis remained confined to the nursing home until January 4, 2016. When he was discharged, his physician recommended he should not practice law until he had been evaluated by a neuropsychologist. After examining Medearis on January 30, 2016, the neuropsychologist found he had suffered declines in cognitive abilities. He stated that there was nothing to prohibit Medearis's return to legal work, but he recommended that Medearis return gradually and under the supervision of another attorney until he demonstrated his cognitive skills were intact.

The legal guardianship remained in place until February 2, 2016, when the state court lifted it upon a motion Ms. Medearis had filed at the end of January. Neither Medearis nor Ms. Medearis ever contacted the City about Medearis resuming his position as City Attorney until March 2016, when Medearis reached out to the Mayor.

3

In this litigation, Medearis sued both the City and Mayor Nichols in his official capacity. He asserted FMLA claims of retaliation and interference and a state-law claim for intentional infliction of emotional distress. During briefing on the City's summary-judgment motion, Medearis conceded his claims against Mayor Nichols and his state-law claim, and he moved to dismiss his FMLA retaliation claim. The district court granted dismissal of the FMLA retaliation claim and granted summary judgment in favor of the defendants on the FMLA interference claim and the state-law claim. Medearis now appeals the judgment in favor of the City on the FMLA interference claim.

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review the district court's summary judgment decision de novo to determine whether a genuine issue of material fact exists, viewing the record in the light most favorable to [Medearis]." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).

The FMLA provides eligible employees who are suffering "a serious health condition" that makes them "unable to perform the functions of [their] position" the right to take up to twelve workweeks of leave in a twelve-month period. 29 U.S.C. § 2612(a)(1)(D). Such employees also are entitled, on return from FMLA leave, to be reinstated to their position or an equivalent position. *Id.* § 2614(a)(1). The FMLA

4

makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA right. *Id.* § 2615(a)(1).

There are three elements to a FMLA interference claim: "(1) that [the plaintiff] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [his] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [his] FMLA rights." *Campbell*, 478 F.3d at 1287 (internal quotation marks omitted). Once a plaintiff has established the first two elements, the burden shifts to the employer to satisfy the third element. *Id.* The parties have stipulated for purposes of the summary-judgment motion that Medearis was protected by the FMLA, but the district court ruled against Medearis on both remaining elements.

"In order to satisfy the second element of an interference claim, the employee must show that []he was prevented from taking the full 12 weeks[] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Id.* The record is clear that the City extended Medearis not only the full twelve weeks of leave mandated by the FMLA, but more—it paid him and continued his benefits for approximately twenty-one weeks, from September 8, 2015, through January 31, 2016. The issue, then, is whether a reasonable jury could find that the City denied him reinstatement following his leave. For reinstatement, the relevant date is December 1, 2015, when Medearis's FMLA-guaranteed twelve weeks of leave ended.

5

The district court held that Medearis had not shown any adverse action by the City because Ms. Medearis, his legal guardian, had voluntarily and without coercion submitted a resignation on behalf of Medearis. Once she submitted the resignation letter, the district court held, the City was not required to make any effort to reinstate Medearis to the position of City Attorney. On appeal, Medearis contends the district court erred in concluding that the resignation was truly a knowing and voluntary act by Ms. Medearis. But we need not decide whether the district court correctly concluded that a reasonable jury could not find in favor of Medearis on the second, or even the third, element. That's because we agree with the district court that Medearis has failed to show prejudice.[1]

As the district held, even if the City interfered with Medearis's exercise of his FMLA rights, he was not prejudiced because no reasonable factfinder could conclude that he was capable of returning to work when his leave expired on December 1, 2015. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (stating

---

[1] Regarding the third element, the district court held that even "[a]ssuming . . . that the City's act of soliciting the letter and accepting it before the end of the twelve[-]week period amounted to adverse action," the claim would still fail because "[Medearis] has not met his burden with respect to the third, causation element of his claim." Aplt. App., Vol. II at 553. But this was error because once the employee establishes the first two elements, the burden shifts to the employer to establish the third element. *See Campbell*, 478 F.3d at 1287. Medearis therefore had no burden at this stage of the analysis—rather, the City had the burden to show no genuine issue of material fact as to whether its solicitation of the resignation letter was related to the exercise of Medearis's FMLA rights. Nevertheless, for the reasons discussed above, even when the burden is properly placed on the City, Medearis's FMLA interference claim can't survive the City's summary-judgment motion.

6

that "[the FMLA] provides no relief unless the employee has been prejudiced by the violation").

Medearis claims that he could have returned to work had he known his FMLA leave expired on December 1, 2015. He asserts that by then there was no medical reason to justify his being confined to a nursing home, and that the legal guardianship proceeding was void for being procedurally infirm. In support, among other evidence, he offered state-court filings from December 2015 attacking the guardianship, as well as testimony from his family members that he was acting normally at a family gathering at Thanksgiving.

As the district court concluded, however, regardless of Medearis's actual mental and physical condition,[2] no reasonable jury could conclude that he would have been able to return to work on December 1, 2015. He was confined to a nursing home until January 4, 2016, and he was the subject of a state-court order of legal guardianship until February 2, 2016. Even if the guardianship was improperly obtained, as Medearis asserts, it remained valid until the state court vacated it. And while the guardianship remained in effect, Medearis was deemed incapable of conducting his own affairs. *See* Okla. Stat. tit. 30, § 1-112(A)(2) (providing that the Oklahoma Guardianship and Conservatorship Act applies to "[i]ncapacitated and

---

[2] The district court expressed doubt, but didn't decide, that Medearis's evidence was sufficient to create a genuine issue of material fact as to his mental and physical condition as of December 1, 2015. Like the district court, we need not evaluate Medearis's actual competency. But we note that as late as January 30, 2016, a neuropsychologist recommended that Medearis undertake only a gradual return to work as an attorney, and that initially he be supervised by another attorney.

partially incapacitated persons"); *id.* § 1-111(12) (defining "incapacitated person" as an adult who is impaired by physical or mental illness or drug or alcohol dependency "whose ability to receive and evaluate information effectively or to make and to communicate responsible decisions is impaired to such an extent that said person: (1) lacks the capacity to meet essential requirements for his physical health or safety, or (2) is unable to manage his financial resources"). Under these circumstances, no reasonable juror could conclude that as of December 1, 2015, Medearis could have returned to work as the City Attorney.

The district court's judgment is affirmed.

Entered for the Court


Nancy L. Moritz
Circuit Judge

8